In the Matter of JUDSON D. CAMPBELL, an Attorney, Respondent.

First Department, March 13, 1936.

*S. C. Lewis* of counsel [*Einar Chrystie*, attorney], for the petitioner.

Respondent in person.

MARTIN, P. J.   The respondent, on October 28, 1932, was suspended from practice for two years because of professional misconduct in that in two instances he concealed from his clients the fact that moneys had been collected for their account, a portion of which he converted to his own use.   Subsequently, five additional charges of misconduct were filed against him, upon which hearings have been had.   The referee has recommended the dismissal of the charges upon the ground the petitioner has not sustained the burden of proof.   We wholly disagree with that conclusion.   The evidence clearly sustains at least three of the charges and shows respondent to have been guilty of misconduct.

On or about May 20, 1931, Mrs. Esther Mandel retained the respondent to obtain an annulment of her marriage to one Joseph Willinger for an agreed fee of two hundred dollars payable fifty dollars down and seven dollars and fifty cents a week.   Mrs. Mandel paid an aggregate of one hundred and fifty dollars and testified that she induced the respondent to reduce his fee to one hundred and seventy dollars.   Corroboration of this is found in

the receipt of the respondent evidencing the receipt of ten dollars, reading as follows:

" Received from Mrs. Esther Willinger the sum of Ten Dollars in *Willinger* v. *Willinger* — balance due Ten Dollars upon payment of which I will put case on calendar for trial.

" Dated *March* 2, 1932.        JUDSON D. CAMPBELL."

Mrs. Mandel testified that pursuant to instructions of the respondent she left ten dollars, the final payment, with a girl in respondent's office. She was thereafter unable to communicate with the respondent and eventually retained another attorney, who procured for her an annulment of her marriage. The respondent did nothing further than serve a summons and complaint on Willinger after he had been located by Mrs. Mandel. The excuse given by the respondent for not proceeding with the case is that he did not receive the final ten dollars and that Mrs. Mandel told him she was going back to Canada to her people and would come to see him when she got back and pay him, at which time he should proceed with the action. The respondent framed a series of questions upon cross-examination of Mrs. Mandel so as to bring forth answers to lend some support to his contention. He combined several questions into one to accomplish that purpose: " Didn't you come down after you had paid this Ten Dollars, didn't you come to my office about a week later and tell me you had no more work and you were going back to Canada to your people? Did you or did you not? " Mrs. Mandel replied: " I remember mentioning, I went back two or three times in the time that I retained that, but I don't remember whether after this Ten Dollars or after that other Ten Dollars, but I know I paid One hundred Seventy Dollars."

The answer indicates that the witness did not intend to testify to an agreement that the prosecution of the action would be suspended until she returned from Canada and paid the balance of ten dollars. This she testified unequivocally she paid. The respondent failed to justify his abandonment of the case or his failure to leave any address at which his clients could communicate with him.

The second charge arises out of the conduct of the respondent with reference to his employment by one Dominick Vacca who had brought a proceeding for an accounting against a former partner. The referee found that Mr. Vacca was entitled to $374. Mr. Vacca was dissatisfied with that sum. The defendant in the action moved to amend the judgment so as to grant him an additional credit of $1,250, which motion the respondent agreed

to defend. An agreement of retainer was made providing that respondent's fee should be $200, payable fifty dollars down and twenty-five dollars a week. The defendant's motion was granted and an amended report filed finding the defendant entitled to judgment against Mr. Vacca for $196. About three weeks later Mr. Vacca delivered the stenographer's minutes to the respondent and he undertook to prepare objections. A couple of days later Mr. Vacca returned to the respondent's office and found the minute book lying on his desk. Thereafter he was unable to obtain any information as to what had become of the respondent, although someone in the office returned his papers to him. The respondent claimed he had requested the additional payments of twenty-five dollars called for by the retainer and told Mr. Vacca that he would not continue with the case until he was paid. This Mr. Vacca denied. He had paid the initial fifty dollars promptly and paid ninety-five dollars for the stenographer's minutes, and it is most improbable he would have thereafter abandoned the appeal rather than make the required payments. The evidence establishes that the respondent abandoned his office and his clients.

The third charge was also clearly proved. It appears that in November, 1929, Mrs. Katherine McCartney retained the respondent to prosecute in her behalf an action to recover damages for personal injuries upon a contingent fee of thirty-three and one-third per cent. She signed a complaint and thereafter called frequently at the office of the respondent for a period of some three years, after which she was unable to locate him. She was unable to ascertain whether any action had ever been instituted. Another attorney, whom Mrs. McCartney consulted, wrote the respondent in March and April, 1932, for information about the case and received no reply. The Bar Association wrote him in April, 1932, for an explanation but received no reply. The respondent claimed that upon investigating the case he determined that he did not want to go on with it and returned the case to his clerk, Ruthoser, who had brought it into the office, together with the papers and consents to substitutions. He does not claim he notified Mrs. McCartney of that fact. Ruthoser, now a member of the bar, testified that he never secured a consent to substitute another attorney in place of the respondent in the McCartney case.

The evidence clearly establishes an abandonment by the respondent of his client's interests and a lack of frankness similar to that which characterized his testimony in the proceeding resulting in his prior suspension. (236 App. Div. 429.)

To sustain the conclusion of the referee it would be necessary to find that all the witnesses who testified to the facts were either

mistaken or testified falsely, and that the respondent alone gave the true version of all the separate transactions. There is absolutely no warrant for any such conclusion.

The unfitness of the respondent to engage in the practice of the law has been forcibly demonstrated. He should be disbarred.

McAvoy, O'Malley, Townley and Glennon, JJ., concur.

Respondent disbarred.